Darrylyn G. BLINCOE, Appellant,

v.

Quention DOCKERY, Respondent.

No. WD 61073.

Missouri Court of Appeals,
Western District.

March 18, 2003.

Jeffrey S. Royer, Blue Springs, MO, for Appellant.

Quention Dockery, Kansas City, pro se.

Before: ELLIS, C.J., and HOWARD and HARDWICK, JJ.

VICTOR C. HOWARD, Judge.

Darrylyn G. Blincoe (Mother) appeals from the circuit court's judgment in a paternity action finding Respondent Quention Dockery (Father) to be the biological father of her daughter D.B. In her only point on appeal, Mother alleges that the circuit court abused its discretion in failing to award her retroactive child support. We dismiss for lack of a final and appealable judgment.

## Background

In the early 1970's, Mother and Father dated and lived together for approximately six months in Kansas City, Missouri. During this time, they engaged in sexual intercourse, and Mother became pregnant.[1] On September 17, 1972, a female minor child, D.B., was born to Mother in Tulsa, Oklahoma. Mother and daughter later returned to Kansas City.

On February 21, 1984, the Jackson County Prosecutor, on Mother's behalf, filed a paternity action against Father. Father filed his answer, and discovery en-

---

1. Mother was nineteen and Father was forty-four at the time D.B. was born.

sued. The following year, on March 12, 1985, the court entered a default judgment for paternity and child support against Father. After the court denied his motion to set aside the judgment, Father appealed to this court. On June 19, 1985, pursuant to a stipulation of the parties, this court ordered the judgment vacated and the cause remanded for rehearing and appointment of a guardian ad litem to represent the minor child. Later that year, the parties conducted additional discovery.

Nothing further appears in the court record of this case until fifteen years later, when, on June 20, 2000, Mother filed a Notice of Hearing with the court. The circuit court conducted a hearing on October 31, 2000. On November 6, 2000, the court entered its judgment dismissing the matter for lack of jurisdiction. The court denied Mother's motion to amend the judgment, explaining that the child had never been joined by the court as a party to the action and neither she nor counsel on her behalf had entered her appearance. The court explained in its order, "[D.B., the 'child' who has since been emancipated,] is free to pursue a determination of paternity in the future if she chooses to file a petition."

On June 1, 2001, Mother and D.B. filed a "Petition for Determination of Father–Child Relationship and Order of Child Support (QN)" in the family court division of the Circuit Court of Jackson County. Father was properly served but did not file an answer.

On November 8, 2001, at a hearing before a Commissioner, Mother and D.B. appeared with counsel, and Father appeared pro se. At the hearing, the Commissioner admitted, without objection, the January 14, 1985, blood test results from the Midwest Organ Bank paternity tests, which did not exclude Father as D.B.'s father, found the likelihood of paternity was 99.4%, and concluded that "Quention Dockery is the father of [D.B.]"[2] Mother also testified concerning her past expenses in raising D.B. and submitted a Form 14. Father testified that he was now 73 years old with health problems and high medicine costs. He stated he was retired with income of $1,300 "and some" per month, was unable to keep up his utilities, and had no money. At the close of the evidence, the Commissioner announced that it found Father to be the biological father and ordered the amendment of D.B.'s birth certificate to so reflect. The Commissioner announced that he was taking the "child support" issue under advisement to "do a little looking into it."

On December 10, 2001, the Commissioner entered his "Findings and Recommendations," in which he affirmed his findings announced at the close of the evidence at the hearing. The Commissioner further assessed the costs of paternity blood testing, if any, against Father, but he did not make any mention of the past support issue. On January 2, 2002, after transfer from the Commissioner, the circuit court entered its judgment and order adopting the Commissioner's findings and recommendations. Mother subsequently moved to amend the judgment, again requesting past child support. After the motion was denied, she timely filed this appeal. Father has not filed a Respondent's brief.

### Discussion

 As mentioned above, the court made no specific holding or finding with regard to Mother's entitlement to compensation for past child support of D.B. It

2. *See* Section 210.822.1(4), which states that "[a] man shall be presumed to be the natural father of a child if ... [a]n expert concludes that the blood tests show that the alleged parent is not excluded and that the probability of paternity is ninety-eight percent or higher, using a prior probability of 0.5."

neither explicitly denied the request nor granted the request, which leads us to question the finality of the judgment. We must, therefore, consider whether this court has jurisdiction to review the matter. *Thomas v. Thomas*, 910 S.W.2d 825, 827 (Mo.App. E.D.1995). As explained in *Thomas*, "[i]n order for a judgment to be final and appealable, it must dispose of all issues and all parties in the case. If the judgment is not final and appealable, the appeal must be dismissed as premature," except in certain circumstances not applicable here. *Id.* (citations omitted); *See* Rule 74.01(b) (discussing judgment on multiple claims).

The 2001 petition's prayer for relief requests: (1) a determination of the existence of the father-child relationship between Father and D.B.; (2) a declaration that Father is the biological father of D.B.; (3) amendment of D.B.'s birth certificate to show Father as D.B.'s father; (4) for a judgment in favor of Mother and D.B. for past support of D.B. from the date of the filing of the original petition on February 21, 1984, until D.B. would have been legally emancipated in May 1991; (5) for attorney's fees and costs incurred; and (6) for such other Orders as the court may deem just and proper in the circumstances. Although the trial court entered judgment as to the first three claims and for costs, it made no finding on past support. This is so despite Mother's repeated requests for such. As in *Thomas*, "the trial court made an incomplete finding." *Id.* Because the court did "not dispos[e] of all issues presented in the pleadings and evidence," we dismiss the appeal for lack of a final judgment. *Id.*

ELLIS, C.J., and HARDWICK, J., concur.