

# In the
# Missouri Court of Appeals
## Western District

S.K., ET AL.,

          Appellants,

                              **WD85701 Consolidated with**
                              **WD85702**
                              **OPINION FILED:**
                              **April 18, 2023**

v.

T.K., M.K., and R.R.,

          Respondents.

### Appeal from the Circuit Court of Platte County, Missouri
The Honorable Thomas Clark Fincham, Judge

Before Division Three:  Janet Sutton, Presiding Judge, Cynthia L. Martin, Judge, and Edward R. Ardini, Jr., Judge

S.K. ("Appellant") appeals from the trial court's judgments and orders establishing that T.K. ("Respondent") and Appellant are the natural parents of A.I.A.K. ("Daughter") and E.H.K. ("Son") (collectively "Children").  Appellant asserts that the trial court erred in declaring Respondent to be the Children's natural parent because, in doing so, it

misapplied the Uniform Parentage Act.[1]  Because the trial court's judgments and orders establishing paternity were not final for the purpose of appeal, we do not have jurisdiction, and Appellant's appeals must be dismissed.

## Factual and Procedural Background

On multiple occasions in 2015 and 2016, M.K. donated semen to Appellant and Respondent, two females in a romantic relationship. Appellant and Respondent used M.K.'s semen to artificially inseminate Appellant.  Prior to M.K.'s donations, Appellant, Respondent, and M.K. agreed that M.K. would have no claim or interest in any child that resulted from the insemination; that M.K. would have no contact or relationship with any resulting child; that M.K. would not be identified on any resulting child's birth certificate; and that M.K. would consent to an adoption of any resulting child in the future, if necessary.  One of the attempts of artificial insemination was successful.  When Appellant and Respondent were married in October 2016, Appellant was pregnant with Daughter.  Daughter was born in December 2016, and Appellant and Respondent were identified as Daughter's parents on her birth certificate, despite none of Respondent's genetic material being used to conceive Daughter.

During 2017, R.R. donated semen to Appellant and Respondent, and the couple used R.R.'s semen to artificially inseminate Appellant.  Prior to R.R.'s donations, Appellant, Respondent, and R.R. agreed that R.R. would have no claim or interest in any

---

[1]Section 210.817 *et seq.*  All statutory references are to RSMo 2016 as supplemented through April 20, 2021, the date Appellant filed petitions seeking declaration of paternity, child custody, parenting time, and child support, unless otherwise noted.

child that resulted from the insemination; that R.R. would have no contact or relationship with any resulting child; that R.R. would not be identified on any resulting child's birth certificate; and that R.R. would consent to an adoption of any resulting child in the future, if necessary. One of the attempts of artificial insemination was successful, and Son was born in October 2017. Appellant and Respondent were identified as Son's parents on his birth certificate, despite none of Respondent's genetic material being used to conceived Son.

Appellant and Respondent separated in July 2019, and Appellant filed a petition for dissolution of marriage in August 2019 in the Circuit Court of Platte County in case number 19AE-DR00305.[2] The judge assigned to preside over the dissolution action apparently questioned her ability to address issues relating to the Children without a determination of the parties' legal relationships to the Children. In response, Appellant filed a petition in the Circuit Court of Platte County seeking a declaration of paternity, child custody, parenting time, and child support on behalf of Daughter against Respondent and M.K., and a separate petition seeking the same on behalf of Son against Respondent and R.R. (collectively "Petitions").[3] The Petitions each included: (1) a count asking the trial court to determine the parent-child relationship with the Children held by

---

[2] This appeal is not taken from the dissolution proceeding, and though we are advised of the proceeding by references in Appellant's Brief, the pleadings and proceedings in the dissolution action are not a part of the record on appeal in this case.

[3] The Petitions also identified and named "John Doe" to "assure service on all possible putative biologic[al] fathers" in the event that DNA testing revealed that M.K. is not Daughter's biological father or in the event that DNA testing revealed that R.R. is not Son's biological father. Because DNA testing confirmed that M.K. and R.R. are the biological fathers of the Children, the allegations against John Doe are rendered moot.

Respondent and the respective donors of genetic material; and (2) a count asking the trial court to award Appellant sole legal and sole physical custody of the Children, to designate Appellant's address as the Children's address, to adopt Appellant's proposed parenting plan, to order that "the payor parent" pay "an adequate amount" for child support, and to order Appellant to provide the Children health insurance. The Petitions were assigned to a different judge than was presiding over the dissolution action.

The first hearing in the paternity actions took place on August 4, 2021, at which time the parties agreed that the three cases--the dissolution action and the two paternity actions--should be heard by the same trial judge. Following the August 4, 2021 hearing, the dissolution action was reassigned to the trial judge assigned to preside over the paternity actions ("trial court").

On November 22, 2021, the trial court held a docket call in the dissolution action and the paternity actions. The parties advised the court that they wanted to first "do the determination of paternity separate and apart," from all other issues in the cases. The trial court confirmed: "[I]t's just going to be paternity only. We're not going to do custody . . . . [I]t's just going to be who's dad and who's not and all that, okay?" Based on that confirmation, the trial court set the paternity issues in the paternity actions for trial.

The parties appeared on January 19, 2022, for the trial to determine Daughter's paternity, and on February 15, 2022, for the trial court to determine Son's paternity.[4]

_____

[4]While the Appellant asserts in her brief that the two paternity actions were consolidated by the parties' agreement, the record indicates that, on the first day of trial, the division clerk confirmed to the trial court that the cases--the two paternity actions and the dissolution action--were not consolidated and instead remained "three individual

4

Following testimony from Appellant, Respondent, the guardian ad litem, and the putative fathers, the trial court took the matters under submission.

The trial court issued a judgment and order establishing parent-child relationships with respect to Daughter, and a separate judgment and order establishing parent-child relationships with respect to Son (collectively "Judgments") on April 13, 2022.[5] The Judgments concluded that the evidence established that Daughter was the product of Appellant's and M.K.'s genetic material, and that Son was the product of Appellant's and R.R.'s genetic material. The Judgments observed that the Children were born during the course of Appellant and Respondent's marriage; that Appellant and Respondent were both identified as parents on the Children's birth certificates; and that M.K. and R.R. each agreed with Appellant and Respondent prior to the Children's respective conceptions that, as the biological fathers, they would have no claim or interest in any child that resulted from the attempts at artificially inseminating Appellant. The Judgments, relying on our Eastern District's decision in *Schaberg v. Schaberg*, 637 S.W.3d 512 (Mo. App. E.D.

---

cases," with the trial court simply agreeing to set trials on the paternity issues raised in the two paternity actions on the same date.

The record is consistent with the division clerk's representation. The trial court initially set the trials regarding Daughter's and Son's paternity for the same day. However, the trials were ultimately conducted on separate days; the paternity cases retained separate case numbers and docket entries; and the trial court issued separate judgments determining Daughter's paternity and Son's paternity. *See City of Kansas City v. Woodson*, 130 S.W.3d 7, 10 (Mo. App. W.D. 2004) ("[W]hile civil actions, joined solely for trial, remain separate with respect to docket entries, verdicts, judgments, and all aspects except trial, civil actions consolidated into one civil action do not.").

[5]The Judgments are nearly identical, varying only with respect to the identification of the child at issue, the timing of the artificial insemination, and the identification of the donor of genetic material.

2021), concluded that to deny "Respondent the marital benefit of being the natural parent of [the Children] would be unconstitutional [because] being on birth certificates, child custody, and child support [are] benefits of marriage to which same-sex couples must have access." As such, the Judgments ordered that the Children were the natural children of Appellant and Respondent, and concluded that M.K. had no claim or interest in Daughter and that R.R. had no claim or interest in Son.

On May 11, 2022, Appellant filed a motion to amend each of the Judgments (collectively "Motions to Amend"). Appellant's Motions to Amend argued that Missouri only recognizes natural parentage or parentage by lawful adoption, neither of which were implicated here with respect to Respondent. The Motions to Amend asserted that, in recognizing Respondent as a natural parent of the Children, the Judgments ignored section 210.834.4, which concerns the results of paternity testing, and section 210.824, which concerns artificial insemination. The Motions to Amend further asserted that the Judgments violated Appellant's right to equal protection in that the trial court treated a same-sex couple differently than a similarly situated opposite-sex couple. Following a hearing on June 10, 2022, the trial court denied the Motions to Amend.

Appellant filed notices of appeal from the Judgments in the Missouri Supreme Court, asserting that the appeals concerned "[t]he validity of a statute or provision of the Constitution of Missouri." The Supreme Court ordered the appeals "transferred to the Missouri Court of Appeals, Western District, where jurisdiction is vested." Upon transfer, we consolidated the appeals.

6

## Finality of Judgment

Before addressing the merits of Appellant's appeal, we must first address whether the Judgments are final for the purpose of appeal. *Complete Constr., LLC v. Frog Eyes, LLC*, 655 S.W.3d 274, 277 (Mo. App. W.D. 2022). The existence of a final judgment is a prerequisite for appellate review pursuant to section 512.020(5). A judgment is final if it both: (1) is a judgment in that it "fully resolve[s] at least one claim in a lawsuit and establish[es] all the rights and liabilities of the parties with respect to that claim"; and (2) is final in that it "disposes of all claims (or the last claim) in a lawsuit, or . . . has been certified for immediate appeal pursuant to Rule 74.01(b)." *Complete Constr., LLC*, 655 S.W.3d at 277 (quoting *Wilson v. City of St. Louis*, 600 S.W.3d 763, 771 (Mo. banc 2020)). If a judgment does not meet both of those criteria, then we must dismiss the appeal. *Id.*

There are two Judgments before us that arose from the Petitions. The Petitions were near mirror images, varying only with respect to the identification of the child at issue, the timing of the artificial insemination, and the identification of the donor of genetic material. The Petitions each included two counts: (1) a count that requested that the trial court determine the presence or absence of a parent-child relationship between Respondent and Daughter or Son, and the presence or absence of the same between the donor of genetic material and Daughter or Son; and (2) a count that asked the trial court to award Appellant sole legal and sole physical custody of the Children, to designate Appellant's address as the Children's address, to adopt Appellant's proposed parenting

7

plan, to order that "the payor parent" pay "an adequate amount" for child support, and to order Appellant to provide the Children health insurance.

The Judgments are each titled "Judgment and Order Establishing Parent/Child Relationship," and true to their title, only address the parenting relationship between Children, Respondent, M.K., and R.R. The Judgments neither address the second count of the Petitions nor certify the Judgments as final for the purpose of appeal pursuant to Rule 74.01(b).[6] The Appellant did not dismiss the second count of the Petitions prior to entry of the Judgments, or at any time prior to filing her notices of appeal. Thus, the issues of legal and physical custody of the Children, the Children's address, the adoption of a parenting plan, child support, and the provision of health insurance for the Children set forth in the second count of the Petitions have been neither adjudicated nor dismissed, and remain pending before the trial court.

We cannot excuse the Judgments' failure to address the second count of the Petitions on the basis that the relief sought by the second count was necessarily rendered moot by the Judgments' disposition of the first count of the Petitions. The second count of the Petitions asked the trial court to award Appellant sole legal and physical custody of the Children, a request for relief that implicates the determined parenting relationship rights of M.K., R.R., and Respondent. The second count of the Petitions asked the trial court to "[e]nter[] an Order that the payor parent be required to pay an adequate amount for child support," without identifying *who* the payor parent would be, and in a manner

_____

[6]We do not address whether the Judgments would have been eligible for certification for interlocutory appeal, but merely note that they were not so certified.

8

that plainly contemplated that the payor parent would be whomever the trial court declared to be legally responsible for the Children as between M.K., R.R., and Respondent. The second count of the Petitions asked the trial court to designate Appellant's address as the address for the Children as against the determined parenting relationship rights of M.K., R.R., and Respondent. And the second count of the Petitions asked the trial court to approve a parenting plan, and represented that Appellant would submit a proposed parenting plan for the trial court's consideration, based on the determined parenting relationship rights of M.K., R.R., and Respondent.

These issues raised in the second count of the Petitions remain relevant and unresolved following the trial court's resolution of the first count of the Petitions. They remain relevant and unresolved as to T.K. who was declared by the trial court to be the natural parent of the Children. And, because the mandate sought by S.K in this appeal is reversal of the Judgments and a remand with instructions to declare S.K. and M.K. to be the lawful parents of Daughter, and S.K. and R.R. to be the lawful parents of Son, the issues raised in the second count of the Petition would remain relevant to M.K. and R.R. on remand. The parties expressly contemplated that these issues would remain pending, and would not be resolved by the Judgments, as they asked the trial court to determine count one of the Petitions separate and apart from all other issues in the paternity actions.[7]

---

[7] Though the issues of custody of the Children, the adoption of a parenting plan, child support, the designation of an address for the Children, and the provision of health insurance could be resolved in the dissolution action at least insofar as T.K. is concerned, as we have explained, the dissolution action was not consolidated with the paternity

Because the Judgments do not dispose of all claims in the Petitions, they are not final for the purpose of appeal, and we do not have jurisdiction to consider Appellant's appeals. *See Blincoe v. Dockery*, 99 S.W.3d 530, 532 (Mo. App. W.D. 2003) (dismissing an appeal from the determination of paternity in which the judgment failed to dispose of the petition's request for past child support owed); *cf. T.Q.L. ex rel. M.M.A. v. L.L.*, 291 S.W.3d 258, 262 (Mo. App. S.D. 2009) (concluding that the judgment of paternity by the trial court was not final and conclusive as to the issue of paternity because it did not dispose of the entirety of the petition).

## Conclusion

The appeals are dismissed.

_____
Cynthia L. Martin, Judge

All concur

---

actions, and the pleadings in the dissolution action are not a part of the legal file. We cannot confirm, therefore, whether the issues of custody, child support, a parenting plan, and other such matters have been framed by the pleadings filed in the dissolution action. T.K.'s counsel represented during oral argument that the dissolution petition filed by S.K. does not reference the Children--an assertion we cannot confirm from the legal file, but an assertion that is certainly consistent with S.K.'s position in this appeal that T.K. has no lawful parenting relationship with the Children. We therefore discredit S.K.'s counsel's attempt during oral argument to claim that because S.K. testified in the paternity actions that it would be her preference to have issues involving custody and child support to be resolved in the dissolution action, that she officially abandoned Count II of the paternity actions.

10